IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 96-40239
Summary Calendar
_____


UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

versus

DANNY L. SCARBOROUGH,

                                        Defendant-Appellant.


--------------------
Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 9:95-CR-9-1
--------------------
November 13, 1996
Before GARWOOD, JOLLY, and DENNIS, Circuit Judges.[*]

GARWOOD, Circuit Judge:

     Defendant-appellant Danny L. Scarborough (Scarborough) appeals

from his conviction for knowingly falsifying a timber sales tally

sheet, in violation of 18 U.S.C. § 1001, and the subsequent denial

of his motion for a new trial.  We affirm.

## Facts and Proceedings Below

     Scarborough was employed by the United States Forest Service

as a timber marker in the Tenneha district of eastern Texas.

[*]     Pursuant to Local Rule 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

Scarborough's job consisted of marking those trees designated for sale to timber purchasers and recording the volume of timber marked on a tally sheet. Two measurements from each marked tree were recorded on the tally sheet: the diameter at breast height (DBH) and an estimate of tree height, the latter figure represented by the number of merchantable logs in the tree.[1] If the trees concerned were dead and consequently being harvested as salvage timber, the DBH and tree height figures were given an appropriate discount to reflect the trees' reduced value.[2] These adjusted numbers were then cross-referenced with tree volume tables to derive the amount of marketable board feet, the figure upon which the purchase price was based.[3] After price was determined the Forest Service's administrative branch contacted the purchaser for payment prior to cutting.

In June of 1994, Russ Arthur, a criminal investigator for the Forest Service present in the Tenneha district as part of an unrelated investigation of timber theft, discovered freshly cut

---

[1]    The Forestry Service standard log length is sixteen feet.

[2]    The Tenneha district was part of a salvage sale district. Salvage sales comprised sales of dead trees, typically those suffering from the depredations of the southern pine beetle. Under this salvage program, a prospective buyer who discovered beetle-infested trees could contact the Service to arrange for their cutting. The Service would in turn dispatch a marker to designate the trees to be cut and compile a tally sheet.

[3]    The process by which the salvage timber discount was calculated is based upon the testimony of Forest Service employees at trial as clarified by the new trial affidavit of Larry Trekell.

logs next to ten marked stumps.  When Arthur was unable to locate a tally sheet corresponding to this site, he approached Scarborough, who eventually produced a tally sheet showing a total of 944 marketable board feet.

Scarborough was indicted for falsifying the information contained in this tally sheet.[4]  At trial Ben Cobb, a forester for twenty-three years, testified that the trees involved had been green when cut.  Lanier Payne, a Forestry Service expert, also testified that the trees were green and further opined that the 10 trees had contained 5,860 board feet of timber.  Scarborough for his part admitted underscaling the volume on the trees but stated that he did so because they were dead, *i.e.*, salvage timber.  The jury found Scarborough guilty.

Scarborough moved for a new trial based largely upon the affidavit of Larry Trekell, a retired Forest Service employee.[5] Trekell's affidavit asserts that most of the trees had been dead or dying when cut and that the figures, when properly adjusted for the trees being dead, produced a total of 2,936 board feet of timber.[6]

---

[4]    Scarborough was also indicted for accepting $50 in exchange for an unspecified "official act," in violation of 18 U.S.C. § 201. The jury was unable to agree on this count of the indictment, and it was subsequently dismissed by the government.

[5]    Scarborough also presented the affidavits of two purchasers of the timber declaring that the trees were dead when cut.

[6]    Trekell's opinion was based upon an examination of the logs fourteen months after cutting.  The logs had remained undisturbed where they had been cut.

After holding a hearing on the motion, the district court, who had presided at trial, denied Scarborough a new trial, finding that Scarborough had failed to prove both that the proffered evidence was material, not merely cumulative or impeaching, and that it would probably produce an acquittal on retrial. Scarborough timely appeals, challenging both the district court's ruling denying him a new trial and the sufficiency of the evidence against him.

## Discussion

A defendant who challenges a district court's denial of a new trial motion ordinarily has the burden of proving that: (1) the evidence was discovered following trial; (2) the failure to discover this evidence at or before trial was due to no lack of due diligence on the defendant's part; (3) the evidence is material, not merely cumulative or impeaching; and (4) the evidence is such that a new trial will probably produce an acquittal. *United States v. Lopez-Escobar*, 920 F.2d 1241, 1246 (1991) (citations omitted). "However, if the government used false testimony and knew or should have known of its falsity, a new trial must be held if there was *any reasonable likelihood* that the false testimony affected the judgment of the jury." *United States v. MMR Corp.*, 954 F.2d 1040, 1047 (5th Cir. 1992) (emphasis in original) (citations omitted). Regardless of the applicable standard we will reverse a district court's denial of a new trial only if the record reflects a "clear abuse of discretion." *United States v. Adi*, 759 F.2d 404, 407 (5th

4

Cir. 1985) (*citation omitted*).  *See also MMR Corp.*, 954 F.2d at 1049 (explaining district court's exceptional qualification, having viewed the evidence at trial first-hand, to assess the impact of new evidence).

Scarborough first challenges the use of the "probably produce an acquittal" standard by the district court, arguing that Trekell's affidavit clearly demonstrates the falsity of Cobb and Payne's testimony at trial.  We disagree.  Trekell's affidavit implicitly challenges the correctness of the testimony of Cobb and Payne by stating that the trees were dead when cut and concomitantly disputes the correctness of their timber volume calculations by declaring that the applicable measurements should have been more significantly discounted to account for the trees' status as salvage timber.  While it is clear that Trekell's affidavit controverts the government witnesses' testimony that in their view the trees were dead, such a difference of opinion does not render the government's evidence "false" as that term is understood in this context.  *Compare United States v. Nixon*, 881 F.2d 1305, 1311-1313 (5th Cir. 1989) (perjurious testimony); *Adi*, 759 F.2d at 408 (recanting affidavits and witnesses).[7]

---

[7]    Scarborough, a Forestry Service veteran, observed both Cobb and Payne testify, yet the record reveals no significant cross examination concerning the methodology used to determine the government's timber volume figures. *Compare MMR Corp.*, 954 F.2d at 1050.  Given this record, we must assume that the government's methods were sound and that the heart of this dispute turns on two interrelated disputed conclusions, *i.e.*, whether the trees were

Furthermore, Scarborough has made no showing that the prosecutor knew or should have known of any "falsity" in Cobb and Payne's testimony. The district court did not err.

Scarborough next contends that, no matter what standard is applied, the district court abused his discretion by denying Scarborough a new trial. Scarborough specifically challenges the district court's findings that the proffered evidence was merely cumulative or impeaching and that it would not probably produce an acquittal.[8] Scarborough has a strong argument that the district court erred in finding that the proffered evidence was not material. Trekell, an ostensibly impartial Forest Service veteran with extensive experience, offers an apparently cogent alternative to the government's figures while accompanying affidavits present additional fact witnesses on the question whether the trees were dead when cut. Since Scarborough himself was the only witness to testify on his behalf regarding these matters, this evidence is

---

dead when cut and if so what was the proper discount. Trekell's affidavit, even if credible, does not mandate a finding that Cobb and Payne's testimony *must* have been false. *Contrast United States v. McAfee*, 8 F.3d 1010 (5th Cir. 1993). We observe the similarity between the *undiscounted* timber volume calculated by Trekell, 6,087 board feet, and the government's figure of 5,860 board feet and that Trekell examined the logs many months after Cobb and Payne had.

[8] Scarborough assumes that the district court found he had satisfied the "newly discovered" and "due diligence" prongs of the test for obtaining a new trial. The district court did not expressly so find, and we doubt that the record would support a finding favorable to Scarborough on the "due diligence" prong. Given our finding that the motion was otherwise properly denied, however, we do not reach this issue.

arguably newly corroborating and not merely cumulative under the analysis in *United States v. Siddiqui*, 959 F.2d 1167 (2d Cir. 1992). We need not resolve this issue, however.

We turn to whether this evidence makes a verdict of acquittal probable. Trekell's affidavit, while it takes issue with the government's proof in an arguably authoritative way, does not nullify that proof. Furthermore, even were we to assume *arguendo* that a prospective jury would choose Trekell's figures over the government's, the fact remains that the timber volume computed by Trekell (2,936 board feet), with all appropriate discounts included, is still 3 times more than that reported by Scarborough (944 board feet). *See United States v. Bermea*, 30 F.3d 1539, 1565 (5th Cir.) (inference to be drawn from disparity between drug trafficker's declared income and actual wealth not negated by newly discovered DEA report explaining source of funds), *cert. denied*, 115 S.Ct. 1113, 1825 (1995); *Lopez-Escobar*, 920 F.2d at 1246-1247 (new defense evidence negating government agent's testimony does not warrant new trial where jury would still have convicted defendant). While Scarborough's new evidence would doubtless have bolstered his claims, "[w]hether ... newly obtained evidence would have been helpful to the defense is not the standard by which we decide to grant a new trial." *Lopez-Escobar*, 920 F.2d at 1247, *quoting United States v. Snoddy*, 862 F.2d 1154, 1156 (5th Cir. 1989). Moreover, there was other evidence tending to implicate

Scarborough in wrongdoing in this connection. Our review of the record leads us to conclude that the district court acted within his broad discretion in denying Scarborough's request for a new trial.

Finally, Scarborough contends that the evidence presented was insufficient to convict him. Because Scarborough did not seek a judgment of acquittal at either the close of the government's case-in-chief or the close of all evidence, his claim is reviewable only to determine whether there was a manifest miscarriage of justice. *United States v. Laury*, 49 F.3d 145, 151 (5th Cir.), *cert. denied*, 116 S.Ct. 162 (1995). A miscarriage of justice exists when the record is devoid of evidence pointing to guilt or the evidence on a key element of the offense is so tenuous that a conviction would be shocking. *United States v. Pierre*, 958 F.2d 1304, 1310 (5th Cir.) (en banc), *cert. denied*, 506 U.S. 898 (1992).

To establish a violation of section 1001, the government had to prove that Scarborough's tally sheet constituted (1) a statement that was (2) false (3) and material (4) made knowingly and willfully (5) within the purview of government agency jurisdiction. *United States v. Shaw*, 44 F.3d 285, 289 (5th Cir. 1995) (citations omitted). "The requirement that the false representation be made 'knowingly and willfully' is satisfied if the defendant acts deliberately and with the knowledge that the representation is false." *United States v. Guzman*, 781 F.2d 428, 431 (5th Cir.),

8

*cert. denied*, 106 S.Ct. 1798 (1986), *citing United States v. Smith*, 523 F.2d 771, 774 (5th Cir. 1975), *cert. denied*, 97 S.Ct. 59 (1976).

Scarborough contends that there is no evidence that he possessed the requisite intent. Rather, Scarborough insists that his understatement of timber volume was merely an innocent mistake or error in judgment. We find, however, that the discrepancies between the tally sheet and the timber volume presented by the government (*and* Trekell), given Scarborough's background and experience, raise an inference that Scarborough deliberately falsified his tally sheet in order to mislead the Forest Service. *In re International Systems & Controls Corp, etc.*, 693 F.2d 1235, 1243 n.13 (5th Cir. 1982) ("discrepancies between figures could support an inference of specific intent"). After considering these discrepancies in light of Scarborough's initial reticence to disclose the tally sheet, the problems related to other tally sheets compiled by Scarborough, and the fact that he accepted $50 from a timber purchaser on another occasion, we cannot conclude that the record is "devoid" of evidence of Scarborough's guilt or that the evidence as to his intent was so tenuous that his conviction is shocking. Indeed, the evidence is plainly adequate to support his conviction under the standard of review applicable when proper motion for judgment of acquittal is timely made.

## Conclusion

9

Scarborough's appeal presents no reversible error.  His conviction and sentence are accordingly

                                                              AFFIRMED.